E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
TARA B. VAVERE (Cal. Bar No. 279470)
Assistant United States Attorney
Asset Forfeiture Section
    United States Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-5901
    Facsimile:   (213) 894-0142
    E-mail:      Tara.Vavere@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>           v.<br><br>$53,830.00 IN U.S. CURRENCY,<br><br>           Defendant. | No. 2:22-CV-07694<br><br>**VERIFIED COMPLAINT FOR FORFEITURE**<br><br>21 U.S.C. § 881(a)(6)<br><br>[D.E.A.] |

Plaintiff United States of America brings this claim against defendant $53,830.00 in U.S. currency (the "defendant currency"), and alleges as follows:

### JURISDICTION AND VENUE

1. This is a civil forfeiture action brought pursuant to 21 U.S.C. § 881(a)(6).

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant currency is comprised of $33,830.00 in U.S. currency seized from Jerrell Montese Anderson ("Anderson") and $20,000.00 in U.S. currency seized from Andrew Guy Osborne ("Osborne") by law enforcement officers on February 27, 2020, at Los Angeles International Airport ("LAX"), which is located at 1 World Way, Los Angeles, California 90045.

6. The defendant currency is currently in the custody of the United States Marshals Service in this District, where it shall remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Anderson and Osborne may be affected by these proceedings.

## BASIS FOR FORFEITURE

8. On February 27, 2020, law enforcement officers encountered Anderson and Osborne at LAX. The officers were assigned to a Drug Enforcement Administration ("DEA") LAX narcotics task force known as DEA/LAX Group 3, which is comprised of Special Agents from the DEA, deputies from the Los Angeles County Sheriff's Department, officers from the Los Angeles Police Department and the Airport Police Department. Anderson and Osborne were travelling on American Airlines flight #2437 from Memphis, Tennessee to Los Angeles, California and had purchased their tickets two days prior to travel. Narcotic money couriers typically purchase airline tickets a short time before their departure because their schedules are often dependent on other co-conspirators located in drug source cities such as Los Angeles.

9. As Anderson and Osborne deplaned at LAX, they were talking to each other and walking side by side towards the baggage claim area. When Anderson and Osborne reached the baggage carousel, they separated and stood several feet apart from each other, giving the impression that they had not traveled together. Anderson and Osborne each selected a suitcase from the carousel and walked toward the exit, keeping some

distance between one another.  LAX narcotics task force officers then approached Anderson and Osborn.

**Encounter with Anderson**

10. Anderson agreed to speak to the officers about his travel plans but when Anderson presented his identification, Anderson's hands were shaking uncontrollably. Anderson told officers that he and Osborne had traveled to Los Angeles to hang out, that he had purchased their airline tickets two days prior, and that they planned to return to Memphis in two days.  Transporters of contraband or narcotic proceeds typically travel with short turn-around times despite traveling long distances because they travel for the sole purpose of delivering money, narcotics, or both.

11. In response to the officer's questions, Anderson further stated that he had packed his own luggage, that he was not traveling with any contraband or narcotics, and that he had a couple thousand dollars with him.  Anderson said that there was no money in his luggage and consented when officers asked to search his suitcase.  Inside Anderson's suitcase was a burgundy duffle bag which contained a white plastic trash bag, inside of which was an unknown quantity of U.S. Currency.  At this point, Anderson stated that he was carrying $10,000.00 or $15,000.00 but immediately corrected himself and said that he had $20,000.00.  Anderson then agreed to accompany officers to the LAX narcotics task force office, where Anderson consented to a second search of his luggage.  The currency Anderson was transporting totalled $33,830.00 (*i.e.*, a portion of the defendant currency) and bore several characteristics of narcotic trafficking in that it was divided into four bundles and consisted of well used bills that were incrementally wrapped with rubber bands and in denominations that are consistent with narcotic trafficking.  More specifically, this portion of the defendant currency consisted of 60 one hundred dollar bills, 80 fifty dollar bills, 1,086 twenty dollar bills and 211 ten dollar bills.  Inside Anderson's backpack were numerous rubber bands of the same type used to secure the currency.

//

12. Anderson finally told officers that he was carrying about $34,000.00 in his suitcase and that Osborne was carrying another $20,000.00 that belonged to Anderson. Anderson explained that he did not want to travel with all his money in one place, so he had asked Osborne to transport $20,000.00. When asked what he intended to do with the money, Anderson said that he and Osborne planned to visit strip clubs and make some real estate investments while they were in Los Angeles. Anderson was unable to provide any details regarding a potential real estate investment.

13. Anderson gave officers permission to examine his cell phone. On Anderson's cell phone were multiple text conversations regarding the purchase and sale of marijuana, with photos and videos of pound quantities of marijuana. Anderson then admitted that he and Osborn had travelled to Los Angeles to purchase as much marijuana as possible and have it shipped back to Memphis. Anderson explained that he purchases marijuana at $1,800.00 per pound in Los Angeles and sells the marijuana in Memphis for $2,200.00 per pound. Anderson stated that he had traveled to Los Angeles with money for this purpose on multiple occasions and that the seller orchestrates the delivery of the marijuana to Memphis via Federal Express.

**Encounter with Osborne**

14. Meanwhile, Osborne had also agreed to speak with officers about his travel plans, explaining that he, Osborne, was Anderson's stepbrother, and that Anderson had purchased their airline tickets a couple days prior to their travel. Osborne said that he was not traveling with any narcotics or contraband, and when asked how much money he was carrying, Osborne said he was traveling with "a couple bucks."

15. Osborne gave officers permission to search his luggage. Inside Osborne's suitcase was a blue duffle bag which contained a black plastic grocery bag wrapped around an unknown quantity of U.S. Currency. Osborne said that he had forgotten the money was inside his luggage, but that the money belonged to him. Osborne then agreed to accompany the officers to the LAX narcotics task force office, where Osborne again consented to the search of his luggage.

16. While Osborne was walking to the task force office, an officer asked Osborne if Osborne had ever been arrested and Osborne said no. This was an untrue statement as a records check revealed that Osborne had been arrested in Memphis, Tennessee on August 17, 2018, for possession of a controlled substance with intent to distribute. The currency in Osborne's suitcase totaled $20,000.00 (*i.e.*, the remainder of the defendant currency) and bore characteristics of narcotic trafficking in that it was divided into bundles containing well used bills in denominations that are consistent with narcotic trafficking. More specifically, the $20,000.00 consisted of 1,000 twenty dollar bills.

17. When asked about the purpose of his trip, Osborne said that he and Anderson had traveled to Los Angeles to visit relatives and to work with a music artist. Osborne was unable to provide any corroborating details regarding his relatives or a music artist. When officers asked again whose money was in the duffle bag inside Osborne's luggage, Osborne repeated that the money was his and that he could "drop $20,000.00 in a strip club, no problem." When asked about the source of the currency, Osborne said that Anderson had got the money from a bank and gave it to him.

18. Officers asked Osborne about the musician that he and Anderson came to Los Angeles to work with, and Osborne explained that they would meet rappers at a studio, but that Osborne did not know where the studio was located because he didn't know his way around Los Angeles. Osborne further stated that he had been to Los Angeles five or six times in the last year and that the last time he was in Los Angeles was two or three weeks ago. When asked what he does for a living, Osborne said that he worked in a grocery store in Memphis, Ethelyn's Corner Grocery, making about $500.00 per week in cash and does not pay taxes. Osborne could not explain how he is able to afford such frequent trips to Los Angeles based on his income.

19. Osborne gave officers permission to examine his cell phone. On Osborne's cell phone were multiple text conversations regarding the purchase and sale of marijuana, along with photos and videos of pound quantities of marijuana.

5

20. A narcotic detecting canine, Zuke, responded to the LAX narcotics task force office where Zuke positively alerted to the presence of the scent of narcotics on the currency that was recovered from both Anderson's and Osborne's suitcases. Zuke has received over 230 hours of training, during which time he has successfully found over 940 training aids, which consist of actual narcotics.

**Ongoing Criminal Activity of both Anderson and Osborne**

21. Since the seizure of the defendant currency on February 27, 2020, both Anderson and Osborn have continued to engage in criminal activity.

22. On July 31, 2020, Anderson was stopped by police officers for trespassing in Memphis, Tennessee and was subsequently arrested for possession of a controlled substance.

23. On September 9, 2020, Anderson was stopped by police after leaving the scene of a car accident in Memphis, Tennessee. During the traffic stop, officers found a loaded Smith and Wesson 0.38 caliber revolver between Anderson's feet and sale quantities of marijuana inside the vehicle. Anderson was arrested and charged with, among other violations, the manufacture, delivery, or sale of a controlled substance.

24. On April 21, 2021, Anderson was the driver of a vehicle stopped by police in Memphis, Tennessee for a traffic violation. Anderson was carrying $3,583 in U.S. currency, in denominations consistent with narcotic trafficking. More specifically, 163 twenty dollar bills, 28 ten dollar bills, 6 five dollar bills and 13 one dollar bills. Behind the driver's seat was a XDE 9-millimeter handgun which was loaded with one round in the chamber along with a magazine loaded with seven rounds. The handgun was facing downwards, leaning on the center console with the barrel facing towards the driver's side door. Records indicate that the handgun was stolen. Also found inside the vehicle was an electronic scale, an unopened box of clear plastic bags and 1.95 pounds of marijuana. Anderson was arrested and charged with, among other violations, the manufacture, delivery, or sale of a controlled substance.

//

25. On June 6, 2022, Osborne was arrested in Memphis, Tennessee for possession of a controlled substance with intent to manufacture, deliver or sell.

26. Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotics trafficking or was intended to be used in one or more exchanges for a controlled substance or listed chemical, in violation of 21 U.S.C.§ 841, *et seq*. The defendant currency is therefore subject to forfeiture pursuant to 21 U.S.C. §881(a)(6).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant currency;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: October 21, 2022

E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section

　　*/s/ Tara B. Vavere*
TARA B. VAVERE
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

# VERIFICATION

I, Christopher Regan, hereby declare that:

1. I am a Task Force Officer with the Drug Enforcement Administration and the case agent for the forfeiture matter entitled *United States of America v. $58,830.00 in U.S. Currency*.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed October 18, 2022 in LOS ANGELES, California.

_____
CHRISTOPHER REGAN